UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CASSIE SOMERS and JOLIA GEORGES, individually and as the representative of a class of similarly situated persons, and on behalf of The Cape Cod Healthcare 403(b) Partnership Plan,<br><br>    Plaintiffs,<br><br>V.<br><br>CAPE COD HEALTHCARE, INC. and JOHN and JANE DOES 1-10,<br><br>    Defendants. | Civil Action No.: 1:23-cv-12946-MJJ |

**UNOPPOSED MOTION FOR FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT**

## Table of Contents

Background ........................................................................................................................3

Summary of Proposed Settlement.....................................................................................5

Results of Notice Process & Review by Independent Fiduciary ...................................6

Argument ...........................................................................................................................8

   1. The settlement amount is fair, reasonable, and adequate. ....................................9

   2. The proposed payments to the named plaintiffs are fair and reasonable. .............12

   3. The proposed attorneys' fees and costs are fair and reasonable. .........................13

Conclusion .......................................................................................................................13

Exhibit 1 (Settlement Agreement)

Exhibit 2 (Proposed Order)

Exhibit 3 (Notice)

Exhibit 4 (Declaration of Settlement Administrator)

Exhibit 5 (Report of Independent Fiduciary)

Pursuant to Fed. R. Civ. P. 23, Plaintiffs Cassie Somers and Jolia Georges, individually and in their representative capacities for a class of similarly situated persons and on behalf of The Cape Cod Healthcare 403(b) Partnership Plan ("Plan"), request final approval of a proposed settlement that resolves the above-captioned class action lawsuit. A copy of the settlement agreement ("Agreement") is attached as Exhibit 1. A proposed order is attached as Exhibit 2.

Following the Court's preliminary approval of the settlement (ECF No. 46), Court-approved notices were sent to all members of the proposed settlement class. A copy of the notice is attached as Exhibit 3. During the notice period, pursuant to the Court's preliminary approval order and as described in the notice package, a copy of Plaintiffs' Request for Award of Attorneys' Fees and Costs was posted on the settlement website. That motion is being filed contemporaneously with this motion. As discussed below, no class members objected to the proposed settlement or the proposed award of attorneys' fees and costs, and a review of the settlement by an independent fiduciary found the settlement to be fair and reasonable in all respects.

## Background

On December 1, 2023, Plaintiff Somers commenced this Action, challenging the Defendants' exercise of fiduciary duties as to The Cape Cod Healthcare 403(b) Partnership Plan ("Plan"), in violation of the Employee Retirement Income Security Act of 1974 ("ERISA). She filed a First Amended Complaint on January 8, 2024, joined by Plaintiff Georges. (ECF No. 8). The Amended Complaint defines the proposed class as "All persons, except Defendants and their immediate family members, who were participants in, or beneficiaries of the Plan, at any time between December 1, 2017 through the date of judgment."

The case presents two principal claims. One claim challenges the amount of fees charged by Lincoln Retirement Services Company LLC for providing recordkeeping services for the Plan ("Recordkeeping Fees Claim"). The other claim challenges the selection of investments made available by the Plan, including the Lincoln Stable Value Fund ("Lincoln SVF Claim"). As to the Lincoln SVF Claim, the Plaintiffs alleged that Plan participants did not receive an adequate guaranteed crediting rate, resulting in losses during periods of low interest rates, including the years 2021 through 2024.

On February 9, 2024, the Defendants filed a comprehensive motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), asserting that the Amended Complaint should be dismissed in its entirety, based on a lack of standing and a failure to state a claim for breach of fiduciary duty under ERISA. (ECF No. 12). On August 30, 2024, following extensive briefing and a hearing, the Court issued a Memorandum of Decision denying the Defendants' motion. (ECF No. 33).

Following the Court's decision, the parties began discussing a potential resolution. To advance those discussions, the parties engaged in informal but extensive discovery, including production of documents reflecting the deliberations of the Plan's Retirement Plan Oversight & Investment Committee ("Committee") over the last seven years, from 2018 to 2024. The documents included detailed materials presented to the Committee by the Plan's investment advisor, Fiducient Advisors, and minutes of the Committee's quarterly meetings. One of the factors supporting a resolution of the case was the Committee's recent negotiation of substantially lower recordkeeping fees and a higher guaranteed crediting rate for the Lincoln SVF, both of which were effective as of October 1, 2024.

Following preliminary discussions, the parties jointly moved for a stay pending mediation (ECF No. 41), which the Court granted. On December 18, 2024, the parties attended a full-day, in-person mediation with Hon. Mitchell Kaplan (Ret.). As a result of the mediation, the parties reached agreement as to the material terms of a classwide settlement and notified the Court of this development. (ECF No. 43). The Court granted the parties' request to extend the stay pending filing of this Motion. (ECF No. 44).

On February 28, 2025, Plaintiffs filed a Consent Motion for Preliminary Approval of the Settlement (ECF No. 45). On March 14, 2025, the Court issued an order (ECF No. 46) granting preliminary approval of the Settlement and set a Fairness Hearing for August 21, 2025.

**Summary of Proposed Settlement**

The Agreement provides that the above-captioned action be settled by a payment of $900,000 ("Gross Settlement Amount"), thereby avoiding the need for further litigation. The Agreement proposes that the net settlement proceeds, after fees and costs, be allocated equally as between the Recordkeeping Fees Claim and the Lincoln SVF Claim. The amount allocated to the Recordkeeping Fees Claim will be paid to class members in proportion to the assets they had in the Plans between December 1, 2017 and September 30, 2024. That allocation is equitable, because recordkeeping fees were charged as a percent of a participant's assets. The amount allocated to the Lincoln SVF Claim will be paid to class members in proportion to their balances in the Lincoln SVF between January 1, 2021 and September 30, 2024. That allocation is equitable, because it reflects each participant's potential loss for periods during which the crediting rate for the Lincoln SVF was allegedly imprudent.

The Agreement further proposes that one-third of the Gross Settlement Amount be allocated for attorneys' fees and costs, that the two named plaintiffs receive modest service

awards of $2,500 each, and that an additional amount be allocated for administrative expenses of the settlement, including costs for an independent fiduciary[1] ($15,000), fees for a third-party settlement administrator (in an amount expected to be no greater than $29,950), and fees, expenses and costs of the Plan's recordkeeper for any functions performed in connection with implementation and administration of the settlement.

The Agreement also provides that the Defendants will continue to retain the services of a qualified consultant to advise the Committee as to the Plan's recordkeeping and administrative fees and services and the Plan's investments for a period of five years.

Additional details regarding the proposed settlement are set forth in the Agreement itself, which is attached as Ex. 1.

### Results of Notice Process & Review by Independent Fiduciary

The parties hired ILYM Group, Inc. as the independent professional settlement administrator. (Declaration of Amanda Howard ("Howard Decl."), attached as Ex. 4). On March 28, 2025, ILYM mailed the Court-approved notice package to the 9,045 members of the class. (Id. ¶ 9). ILYM received 219 returned notices as undeliverable but was able to identify and send notices to updated addresses for 150 of those returns; 69 notices (<1% of all notices) were deemed undeliverable. (Id. ¶¶ 10-12).

On April 28, 2025, in accordance with the Court's Order Granting Preliminary Approval of Proposed Class Action Settlement, ILYM posted Plaintiffs' Request for Award of Attorneys' Fees and Costs on the settlement website, https://www.ilymgroup.com/CapeCodHealthcare.

---

[1] The independent fiduciary was charged with determining whether to approve and authorize the settlement on behalf of the Plan, pursuant to Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended.

ILYM did not receive any objections to the proposed settlement. (Howard Decl. ¶ 13). The proposed settlement does not require any claim forms.

During the notice process, Defendants retained an independent fiduciary, Fiduciary Counselors ("Fiduciary"), to review the proposed settlement on behalf of the Plan. (Report of the Independent Fiduciary for the Settlement in *Somers, et al. v. Cape Cod Healthcare, Inc., et al*. ("Report of Independent Fiduciary"), attached as Ex. 5). The independent fiduciary was charged with determining whether to approve and authorize the settlement on behalf of the Plan, pursuant to Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended. Fiduciary undertook a diligent investigation, including reviewing relevant court filings and other information, interviewing counsel for the parties, evaluating the strengths and weaknesses of legal and factual positions, reviewing the details of the proposed settlement, reviewing the proposed allocation, and reviewing the proposed award of attorneys' fees. (*Id*. at 1-2). Based on its investigation, Fiduciary reached the following conclusion:

II. **Executive Summary of Conclusions**

After a review of key pleadings, decisions and orders, selected other materials and interviews with counsel for the parties, Fiduciary Counselors has determined that:

- The Court has preliminarily certified the Litigation as a class action for settlement purposes, and in any event, there is a genuine controversy involving the Plan.

- The Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone.

- The terms and conditions of the transaction are no less favorable to the Plan than comparable arm's-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances.

- The transaction is not part of an agreement, arrangement or understanding designed to benefit a party in interest.

- The transaction is not described in Prohibited Transaction Exemption ("PTE") 76-1.

- All terms of the Settlement are specifically described in the written settlement agreement and the plan of allocation.

- To the extent there is non-cash consideration, it is in the interest of the Plan's participants and beneficiaries, and the Plan is receiving no non-cash assets as part of the Settlement.

Based on these determinations about the Settlement, Fiduciary Counselors hereby approves and authorizes the Settlement on behalf of the Plan in accordance with PTE 2003-39.

(Report of Independent Fiduciary, p.1).

**Argument**

A class action may not be settled or compromised without the approval of the Court. Fed. R. Civ. P. 23(e). It is well established, however, that settlements are favored. *Newberg and Rubenstein on Class Actions*, §13.44 (6th ed.) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals."). *See also E.E.O.C. v. Astra U.S.A., Inc.*, 94 F.3d 738, 744 (1st Cir. 1996) ("We do not doubt that public policy strongly favors encouraging voluntary settlement" of class action claims.). The advantages to the parties and the courts are particularly apparent in the compromise of class actions, which are "often complex, drawn out proceedings demanding a large share of finite judicial resources." *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993). *See also Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("In the class action context in

particular, 'there is an overriding public interest in favor of settlement,' [which] minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources").

**1.     The proposed settlement is fair, reasonable, and adequate.**

Before granting approval of a proposed class action settlement, the Court must find that the settlement is fair, reasonable, and adequate, guided by four factors: (1) the class representatives and class counsel have adequately represented the class, (2) the proposal was negotiated at arm's length, (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). All of these factors support approval of the proposed settlement.

First, the class representatives and class counsel have adequately represented the class. Class counsel have extensive experience with wage-and-hour and ERISA class actions, having litigated and resolved dozens of class claims in Massachusetts and other jurisdictions. (Affidavit of Stephen Churchill ("Churchill Aff."), attached as Ex. 4). They conducted an extensive investigation of potential claims before filing suit. They faced and overcame an initial motion to dismiss, which required extensive briefing. They obtained and analyzed voluminous documents and records from the Defendants. And they engaged in protracted settlement discussions with the Defendants, ultimately resulting in a proposed agreement.

Second, the Agreement was negotiated at arm's length, following substantial discovery. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009) ("If the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable."). As noted above, the parties' settlement negotiations followed the production of voluminous records and data. The parties strongly disagreed as to

9

numerous factual and legal issues, as made clear by the course of litigation in this case and by the competing arguments presented in the motion to dismiss.

Third, the proposed relief is adequate. As to the Recordkeeping Fees Claim, and as discussed at length in the motion to dismiss briefing, a key question is what level of recordkeeping fees the Committee could have obtained during the years 2017 through 2024 through prudent oversight. The Defendants' position, in short, is that the Committee did provide prudent oversight, so there was no breach of duty and no loss to Plan participants. The Plaintiffs contend that various benchmark or market data would support a finding that the Committee could have obtained lower fees. Specifically, while the Plan paid recordkeeping fees ranging from about $43 to $60 per participant during 2017 to 2024, the Plaintiffs contended that the Plan could have obtained comparable recordkeeping services for a fee closer to $30 per participant. Given those allegations, the alleged estimated loss to Plan participants was as high as $860,000. The Defendants vigorously dispute the amount of that estimated loss, arguing that it was based on unrealistic and unsupported assumptions. As to the Lincoln SVF Claim, the Plaintiffs contend that a prudent guaranteed crediting rate should have been no lower than 3% during the class period. During the years 2021 through 2024, the Lincoln SVF paid crediting rates that fell below 3%, resulting in an alleged loss to participants of over $3,000,000. The Defendants vigorously dispute that the Committee negotiated an imprudently low crediting rate, arguing that there was no liability at all. The Defendants further contend that it is speculative for the Plaintiffs to assert that the Committee could have negotiated a guaranteed crediting rate of 3% or higher.

Based on these analyses, the settlement amount of $900,000 represents about 25% of the Plaintiffs' best-case scenario, assuming that it established liability as to both claims and further assuming that its calculation of damages was successful. There are, of course, a number of other

possible outcomes, including a judgment in the Defendants' favor. For example, the Plaintiffs might succeed with the Recordkeeping Fees Claim but not the Lincoln SVF Claim. In that case, the settlement exceeds what the Plaintiffs would have recovered in damages. Given the numerous risks that the participants avoid through a negotiated settlement – including, for example, a denial of class certification, a loss at summary judgment, a loss at trial, a loss on appeal, lower-than-expected damages, and extensive delays of litigation – the proposed settlement amount is fair, reasonable, and adequate.

Fourth, the proposed settlement will treat class members equitably relative to each other. Allocating settlement funds to class members is relatively straightforward with respect to the Recordkeeping Fees Claim, because recordkeeping fees were calculated as a percent of a participant's assets. As a result, the agreement proposes to allocate net proceeds based on each class member's plan balances during the relevant class period. Likewise, the allocation with respect to the Lincoln SVF Claim is straightforward, because funds are being allocated in proportion to each participant's potential loss.

In addition to those four factors, the proposed settlement has now been subject to review by all affected parties and an independent fiduciary retained on behalf of the Plan. More specifically, all members of the class and the independent fiduciary have had an opportunity to review the proposed agreement and the proposed allocations as between fees, administrative expenses, service awards, and class funds. There are no objections, and the independent fiduciary affirmatively found that the terms of the proposed settlement are reasonable.

For all of these reasons, the Agreement proposes a resolution that is fair, reasonable, and adequate in light of the relevant factors.

**2.      The proposed payments to the named plaintiffs are fair and reasonable.**

The proposed service awards of $2,500 to each of the two named plaintiffs are modest and have not elicited any objections. Both of the named plaintiffs assisted Class Counsel during the investigation that preceded the filing of this case and during the litigation of this case.

Courts have widely recognized that incentive awards serve an important function in promoting enforcement of state and federal law by private individuals, while encouraging class action settlements. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) ("Incentive awards are recognized as serving an important function in promoting class action settlements"), *quoting In re Lupron*, 228 F.R.D. 75, 98 (D. Mass. 2005); *In re Compact Disc Min. Adver. Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189 (D. Me. 2003) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit"). As one court noted, "[s]ervice awards [*i.e.*, incentive payments] are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. . . It is important to compensate plaintiffs for the time they spend and the risks they take." *Beckman*, 293 F.R.D. at 483 (citations omitted).

Incentive awards serve a particularly important role in employment-related class actions. Named plaintiffs may risk their livelihood to bring a case forward on behalf of their fellow co-workers. Courts have recognized the important role of class actions in the employment context precisely because of this fear of potential retaliation. *See, e.g., Perez v. Safety-Kleen Systems, Inc.*, 253 F.R.D. 508, 520 (N.D. Cal. 2008) (concluding class action was superior because "some class members may fear reprisal"); *Guzman v. VLM, Inc.*, 2008 WL 597186, at *8 (E.D.N.Y.

2008) (noting "valid concern" that "many employees will be reluctant to participate in the action due to fears of retaliation"). This same consideration makes incentive awards appropriate in employment class action settlements, as well: "[Incentive] awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005).

For these reasons, the proposed service awards are fair and reasonable.

3. **The proposed attorneys' fees and costs are fair and reasonable.**

Class Counsel's request for an award of attorneys' fees and costs is set forth in Plaintiffs' Request for Award of Attorneys' Fees and Costs, filed contemporaneously with this motion. Notably, no members of the class objected to the proposed award, and the independent fiduciary found the proposed award to be reasonable:

> Class Counsel seek an award of attorneys' fees in the amount of $300,000, inclusive of out-of-pocket expenses, which represents one-third of the Settlement Amount of $900,000. As of April 28, 2025, the date Class Counsel posted their fee papers on the Settlement website, Class Counsel's expected lodestar (inclusive of expected future work) was $135,800, which would result in a lodestar multiplier of 2.2 if the requested $300,000 were awarded. In our experience, the percentage requested and the lodestar multiplier are within the range of attorney fee awards for similar ERISA cases, with the most common award in similar cases equaling one-third of the settlement amount. In light of the work performed, the result achieved, the litigation risk assumed by Class Counsel, and the combination of the percentage and the lodestar multiplier, Fiduciary Counselors finds the requested attorneys' fees to be reasonable.

(Report of Independent Fiduciary, p.6).

## Conclusion

For these reasons, Ms. Somers and Ms. Georges respectfully request that the Court grant final approval of the proposed class settlement, all as set forth in the proposed order attached as Ex. 2.

        Respectfully submitted,

        CASSIE SOMERS and JOLIA GEORGES, individually and as the representative of a class of similarly situated persons, and on behalf of The Cape Cod Healthcare 403(b) Partnership Plan,

        <u>/s/ *Stephen Churchill*</u>
        Stephen Churchill, BBO #564158
        Osvaldo Vazquez, *admitted pro hac vice*
        FAIR WORK, P.C.
        192 South Street, Suite 450
        Boston, MA 02111
        Tel.   (617) 607-3260
        Fax.   (617) 488-2261
        steve@fairworklaw.com
        oz@fairworklaw.com

Dated: August 1, 2025

## **CERTIFICATE OF SERVICE**

This will certify that on this date I served a copy of this document, by ECF, on counsel for the Defendants.

Dated:  August 1, 2025                                          /s/ *Stephen Churchill*
                                                                                Stephen Churchill